UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REAL PROPERTY AND IMPROVEMENTS LOCATED AT 1840 EMBARCADERO, OAKLAND, CA,<br><br>    Defendant.<br>_____/ | No. C 12-03567 MEJ<br>Related cases: 12-3566 MEJ<br>                    12-5245 MEJ<br><br>**PRELIMINARY QUESTIONS FOR DECEMBER 20, 2012 HEARING** |

Pending before the Court are: (1) the City of Oakland's Motion to Stay (Dkt. No. 16, Case No. C 12-5245); (2) Claimant Concourse Business Center, LLC's Motion for Order Prohibiting Unlawful Use of Defendant Property (Dkt. No. 13, Case No. C 12-3566); and (3) Claimant Ana Chretien's Motion for Order Prohibiting Unlawful Use of Defendant Property (Dkt. No. 64, Case No. C 12-3567). The motions are set for hearing before the Court on December 20, 2012. The Court has thoroughly reviewed the parties' briefs and cited authorities. To assist counsel in their preparation for the hearing, the Court presents the following questions to counsel to guide them in their argument. At the hearing, the Court will first ask counsel to address the questions and present any additional argument relating to Oakland's Motion to Stay. After the Court has heard argument on Oakland's Motion, counsel may then address the questions and present argument relating to the Claimants/Property Owners' Supplemental Rule G(7)(a) Motions. The following questions represent key points raised in the parties' briefs that require clarification, but are not exclusive.

/ / /

/ / /

/ / /

**A.	Questions re: Oakland's Motion to Stay Ruling on Claimants' Rule G(7)(a) Motions**

1. Oakland requests that the Court stay resolution of Concourse's and Ms. Chretien's Supplemental Rule G(7)(a) Motions until it has had an opportunity to present its challenges to the Oakland forfeiture action. If the Court denies the Claimants' Supplemental Rule G(7)(a) Motions, does this moot Oakland's Motion to Stay?

2. The Government and Concourse have challenged Oakland's standing to bring its Motion to Stay. Concurrently, the Government has filed a Motion to Dismiss Oakland's lawsuit arguing, in part, that Oakland lacks standing to bring any lawsuit attacking the forfeiture proceedings. Briefing on the Government's Motion to Dismiss has not closed. Is it premature to address Oakland's Motion to Stay before issues regarding its standing to bring its lawsuit in the first instance have been resolved?

3. The Government contends that it will be harmed if the stay is granted because the stay would impinge its interest in enforcing federal laws. Notably, the Government did not take any action as to either of the defendant properties for several years after they began operating, did not request injunctive relief in its Complaints, did not seek a preliminary injunction at the time it filed the forfeiture actions, and did not independently seek an order pursuant to Rule G(7)(a) (but merely joined in the Claimants' Motions). In light of these facts, can the Government now credibly argue that there is some immediacy to halting Harborside's operations?

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**B.      Questions re: Claimants' Motions for Orders Prohibiting Unlawful Use of Properties**

1.   Is there any dispute that the plain language of Supplemental Rule G(7)(a) makes issuance of any order discretionary?

2.   Section 882 of the Controlled Substances Act vests the district court with "jurisdiction in proceedings in accordance with the Federal Rules of Civil Procedure to enjoin violations of the [Act]." Supplemental Rule G(7)(a) then authorizes the court "on motion or on its own" to enter any order necessary to prevent use of defendant property in a criminal offense. There does not appear to be any disagreement amongst the parties that § 882 of the CSA and Supplemental Rule G(7)(a) must be read together. Are the decisions holding that no private right of action exists under the CSA relevant to the construction of Rule G(7)(a)'s language – or more precisely, silence – as to who is authorized to bring a motion pursuant to the Rule? If only the Government may bring an action under the Controlled Substances Act, and in particular a civil forfeiture action pursuant to § 881(a)(7), does that limit the potential movants for purposes of Supplemental Rule G(7)(a) to the Government?

3.   Although there does not appear to be any reported decisions either granting or denying injunctive relief under Supplemental Rule G(7)(a) in forfeiture cases, can Claimants or the Government provide any other plausible examples of when a claimant – particularly a property owner – would invoke Supplemental Rule G(7)(a) to suspend use of property in alleged criminal activity?

4.   Is the harm that Supplemental Rule G(7)(a) seeks to avoid prospective in nature? The Rule deals with property that the Government does not have possession of and seeks, at least in part, to "preserve the property" and "to prevent its removal or encumbrance." These components of the Rule seem to be targeted at ensuring the property is not destroyed or lost during the pendency of a forfeiture proceeding. Can the same be said of the clause regarding

3

preventing the defendant property to be use in a criminal offense? Specifically, is the Rule concerned with the property's use in a *new* criminal offense, as opposed to its prior use that triggered the forfeiture action?

5. Although Concourse moves for an order enjoining Harborside's use of the property in a criminal offense pursuant to Supplemental Rule G(7)(a), Concourse does not articulate what standard the Court is to apply in considering its request. If a traditional preliminary injunction analysis does not apply, what is the proper standard?

6. As a predicate to issuing an order pursuant to Supplemental Rule G(7)(a) to prevent criminal use of property, the express language of the Rule seems to require that the Court make some finding that the use of the property is, in fact, illegal. As applied in this case, that finding would be that Harborside is using the leased premises in a manner that violates the Controlled Substances Act, 21 U.S.C. § 881(a)(7). Can the Court make such a finding on the current record? Can the Court make this finding without some kind of evidentiary hearing? Is there any precedential effect to such a finding as it relates to the Government's ultimate burden of establishing a violation in the forfeiture actions? Can third parties, such as Concourse and Ms. Chretien, effectively enforce the Controlled Substances Act in this manner?

7. How does Harborside respond to Concourse's assertion that it "does not seek to enjoin all activities of Harborside that may violate the [Controlled Substances Act]," but only "seeks limited injunctive relief prohibiting the use of defendant property to violate the CSA"? In other words, Concourse is not seeking to enjoin Harborside from operating as a medicinal marijuana dispensary business, but merely seeks to enjoin Harborside from operating its business *on Concourse's property*. Does this allow Concourse to get around the challenge that it is bringing a private enforcement action under the CSA because it is merely seeking to compel Harborside to take its purported illegal activity elsewhere?

8. With respect to both Concourse and Ms. Chretien, it is uncontested that the lease agreements relating to their respective properties expressly stated that Harborside would be operating a medicinal marijuana dispensary. Although both Concourse and Ms. Chretien now aver that they mistakenly believed the medical marijuana dispensaries were lawful, what new facts or law have come to light that were not available to Concourse and Ms. Chretien at the time they executed the lease agreements?

9. Both Concourse and Ms. Chretien have benefitted from Harborside's businesses by collecting rent over several years. In fact, in 2011, Ms. Chretien extended Harborside's lease through 2016. Is it disingenuous for Claimants to now attempt to enjoin Harborside's operations when they not only acquiesced in, but financially benefitted from Harborside's business for years?

10. Concourse asserts that injunctive relief prohibiting Harborside's continued use of its property as a medical marijuana dispensary is "less burdensome on the courts and law enforcement agencies and should, therefore, be preferable to the institution of a separate criminal proceeding." Is it less burdensome because it dispenses with the evidentiary burden and procedural safeguards attendant to a criminal proceeding?

11. Concourse argues that because it cannot institute criminal proceedings against Harborside, its Rule G(7)(a) motion is its only means of halting violations of the CSA at its property pending the outcome of the unlawful detainer action it filed in state court. Why didn't Concourse request a stay of the forfeiture action pending the state appellate court's ruling in its unlawful detainer action?

12. If the Court applies the analysis articulated in *Winter v. Natural Resources Defense Council, Inc.*, 55 U.S. 7 (2008), what is the irreparable harm that Concourse and Ms. Chretien will suffer if their Rule G(7)(a) Motions are denied? Won't Concourse and Ms. Chretien have an

opportunity to contest the forfeiture through motions for summary judgment or trial?

13. If the Court grants Concourse's and Ms. Chretien's Rule G(7)(a) Motions, what is the impact of such a ruling on the forfeiture proceedings? Does the ruling simply allow the property owners to argue that the alleged illegal activity has stopped so forfeiture is inappropriate?

**IT IS SO ORDERED.**

Dated: December 19, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge