UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4                    UNITED STATES  DISTRICT COURT

5                     Northern District of California

6

7    UNITED STATES OF AMERICA,                 No. C 12-03567 MEJ

8                      Plaintiff,
            v.
9                                              **ORDER DENYING CLAIMANTS'**
     REAL PROPERTY AND IMPROVEMENTS            **SUPPLEMENTAL RULE G(7)(a)**
10   LOCATED AT 1840 EMBARCADERO,              **MOTIONS and OAKLAND'S**
     OAKLAND, CALIFORNIA,                      **MOTIONS TO STAY**
11
                       Defendant.
12   _____/

13   UNITED STATES OF AMERICA,                 No. C 12-03566 MEJ

14                     Plaintiff,
            v.
15

16   REAL PROPERTY AND IMPROVEMENTS
     LOCATED AT 2106 RINGWOOD AVENUE,
17   SAN JOSE, CALIFORNIA,

18                     Defendant.
     _____/
19

20   CITY OF OAKLAND,                          No. C 12-05245 MEJ

21                     Plaintiff,
            v.
22
     ERIC HOLDER, Attorney General of the
23   United States; MELINDA HAAG, U.S.
     Attorney for the Northern District of California,
24
                       Defendants.
25   _____/

26

27

28

**I.   INTRODUCTION**

Pending before the Court are: (1) the City of Oakland's Motion to Stay Landlords' Motions for Order Prohibiting Unlawful Use of Defendant Property (Dkt. No. 16, Case No. C 12-5245); (2) Claimant Concourse Business Center, LLC's Motion for Order Prohibiting Unlawful Use of Defendant Property (Dkt. No. 13, Case No. C 12-3566); and (3) Claimant Ana Chretien's Motion for Order Prohibiting Use of Defendant Property (Dkt. No. 64, Case No. C 12-3567).  On December 20, 2012, the Court held oral argument on the motions.  After carefully considering the parties' briefs, cited authorities, and oral argument presented, the Court **DENIES** each of the pending motions.

**II.   FACTS AND PROCEDURAL HISTORY**

The relevant facts, taken from the Complaints and the moving papers, are as follows.

**A.      U.S. v. Real Property and Improvements Located at 2106 Ringwood Avenue, San Jose, California, Case No. C 12-3566**

Concourse is the owner of defendant real property, 2106 Ringwood Avenue, San Jose, California (the "San Jose Property").  Compl. ¶ 7, Dkt. No. 1, Case No. C 12-3566.  The San Jose Property consists of an approximately 6,615 square foot office and warehouse space within a larger 26,460 square foot multi-tenant light industrial/office building.  Con. Mot., Dkt. No. 13 at 2.  In November 2009, Concourse leased the San Jose Property to tenants who used the offices and warehouse for a medical marijuana and herbal supplement dispensary.  *Id*.  Subsequently, on June 1, 2011, the lease was assigned to Patients Mutual Assistance Collective Corporation (Harborrside), which has operated a medical marijuana dispensary on the San Jose Property since that time.  *Id*.

On July 9, 2012, the United States filed the instant civil *in rem* forfeiture action pursuant to 21 U.S.C. § 881(a)(7), against the San Jose Property.  Dkt. No. 1.  After receiving notice of the action, Concourse served Harborside with a 30 Day Notice to Cure or Quit, demanding that it immediately cease unlawful activity on the San Jose Property, including the sale of medical cannabis.  Con. Mot. at 3.  On August 21, 2012, after Harborside declined to stop the operation of its marijuana dispensary, Concourse filed an unlawful detainer action in Santa Clara County Superior Court, Case No. 1-12-CV-230841.  *Id*.  Harborside thereafter moved to quash the unlawful detainer action, which the trial

1  court denied on November 5, 2012.  Tr. Dec. 17, 2012 Hearing at 21:21-22:8, Dkt. No. 59.

2  Harborside thereafter filed a Petition for a Writ of Mandate, now pending before the Sixth District

3  Court of Appeal.  *Id.*

4         In the interim, on August 8, 2012, Concourse filed a Notice of Claim in the instant forfeiture

5  action pursuant to Federal Rules of Civil Procedure, Supplemental Admiralty and Maritime Claims

6  Rule G ("Rule G" or "Fed. R. Civ. P. Supp. R. G"), subdivision 5.  Dkt. No. 5.  Subsequently, on

7  August 28, 2012, Concourse  filed its Answer.  Dkt. No. 12.  The following day, on August 29, 2012,

8  Concourse filed the instant Motion for Order Prohibiting Unlawful Use of Defendant Property,

9  seeking to enjoin Harborside from use the San Jose Property to cultivate, possess with intent to

10  distribute, and/or distributing marijuana.  Con. Mot. at 7.  Concourse argues that, despite its demand

11  that Harborside cease sales of marijuana from the San Jose Property, Harborside continues to operate

12  a medical marijuana dispensary and engage in retail sales of marijuana on the Property in violation of

13  21 U.S.C. § 841(a).  *Id.* at 2.  Concourse thus contends that, pursuant to 21 U.S.C. § 882 and

14  Supplemental Rule G(7)(a), it is authorized to seek an order from this Court preventing Harborside

15  from using the San Jose Property in a criminal offense.  *Id.*  On September 7, 2012, the Government

16  filed a notice of joinder in Concourse's Motion. Dkt. No. 16.

17  **B.     U.S. v. Real Property and Improvements Located at 1840 Embarcadero, Oakland,
            California, Case No. C 12-3567**

18

19         Ana Chretien owns the property located at 1840 Embarcadero, Oakland, California ("the

20  Oakland Property").  Compl., ¶ 7, Dkt. No. 1, Case No. C 12-3567.  The Oakland Property is a low-

21  rise, multi-tenant commercial building with on-site parking.  *Id.* ¶ 6.  On January 21, 2006, Ms.

22  Chretien leased a portion of the Oakland Property to Harborside for its operation of a medical

23  marijuana dispensary licensed by the City of Oakland.  Chretien Mot. at 2, Dkt. No. 64.  The initial

24  lease term was for five years with an option to renew.  *Id.*  On January 22, 2011, Ms. Chretien and

25  Harborside executed a Lease Amendment, extending the term of the original lease for an additional

26  five years.  *Id.* at 2-3.  Harborside has been operating a medical marijuana dispensary on the Property

27  during this period.  *Id.* at 3.

28

On July 9, 2012, the United States filed the instant civil *in rem* forfeiture action pursuant to 21 U.S.C. § 881(a)(7), against the Oakland Property.  Compl., Dkt. No. 1.  After receiving notice of the action, and after failing to convince Harborside to voluntarily cease its operations, Ms. Chretien served Harborside with a 3 Day Notice to Cure or Quit, demanding that Harborside immediately cease all alleged unlawful activity at the Property, including the sale of medical marijuana.  Chretien Mot. at 3.  Harborside declined to stop its operations.  *Id.*  Consequently, on August 14, 2012, Ms. Chretien filed an unlawful detainer action in Alameda County Superior Court, Case No. RG 12643579.  *Id.*  Harborside moved to quash Ms. Chretien's complaint and summons, which the trial court granted on November 27, 2012.[1]  Avilla Decl., Ex. A, Case No. C 12-3566, Dkt. No. 50-2.

During this period, on September 17, 2012, Ms. Chretien filed a Notice of Claim to the Oakland Property pursuant to Supplemental Rule G.  Dkt. No. 33.  On that date, Ms. Chretien also filed her Answer and Affirmative Defenses, which she later amended.  Dkt. Nos. 32, 40.  Thereafter, on November 7, 2012, Ms. Chretien filed the pending Motion for Order Prohibiting Unlawful Use of Defendant Property, seeking to enjoin Harborside from operating its business on the Oakland Property.  Dkt. No. 64.  Like Concourse, Ms. Chretien asserts that pursuant to § 882 and Supplemental Rule G, she is authorized to seek an order in the forfeiture action prohibiting Harborside from operating its medical marijuana dispensary in violation of federal law.  Chretien Mot. at 3-4.  On November 8, 2012, the Government filed a Notice of Joinder in Ms. Chretien's

---

[1]  The trial court held:

[A]s a matter of law . . . a landlord cannot rely on [California Code of Civil Procedure] Section 1161(4) to ask a California state court to find a lease terminated, and to issue a writ of possession, based solely on a tenant's use of the premises to operate a medical marijuana dispensary if state law immunizes the tenant's conduct in operating the dispensary from criminal prosecution under state controlled-substance laws and the landlord's only basis for alleging that the tenant is using the property "for an unlawful purpose" under Section 1161(4) is a violation of federal controlled-substance laws.  In such circumstances, a state court could not enjoin the tenant from using the property to operate a dispensary.  To impose the harsher remedy of declaring a lease terminated and authorizing the sheriff to evict a tenant would be to improperly enforce federal criminal law.

(citation omitted).

1   Motion.  Dkt. No. 66.

2   **C.      City of Oakland v. Eric Holder, Attorney General of the United States; Melinda Haag, U.S. Attorney for the Northern District of California, Case No. C 12-5245**

3

4            On October 10, 2012, Oakland filed a Complaint against the Government pursuant to the

5   Declaratory Judgment Act, 5 U.S.C. § 702, and the Administrative Procedures Act, 28 U.S.C. §§

6   2201-2202, seeking to restrain and declare unlawful the Government's forfeiture action against the

7   Oakland Property.  Dkt. No. 1, Case No. C 12-5245.  Oakland alleges that it has established a

8   comprehensive framework regulating the sale of medical cannabis that effectuates the mandates of

9   California's Compassionate Use Act, Cal. Health & Safety Code § 11362.5, and Medical Marijuana

10  Program Act, Cal. Health & Safety Code § 11362.71.  *Id*. ¶ 11.  According to Oakland, its residents

11  will suffer irreparable harm if the Government's forfeiture action proceeds against the Oakland

12  Property and results in the closure of Harborside's Oakland medical marijuana dispensary.  *Id*. ¶¶ 32-

13  35.  Particularly, it alleges that if the Harborside dispensary is closed, patients will turn to street-level

14  drug dealers to obtain marijuana, creating a public safety hazard for themselves, Oakland, and its

15  residents, thereby increasing crime and diverting scarce resources from the Oakland Police

16  Department.  *Id*. ¶¶ 32-33.  It further alleges that such closure will compromise Oakland's ability to

17  monitor the quality and production methods of medical marijuana sold in the licensed dispensaries,

18  creating a health risk for patients.  *Id*. ¶ 34.  Additionally, Oakland avers that closure of Harborside

19  and the threatened closure of other dispensaries operating in Oakland will deprive it of tax revenue

20  generated by the dispensaries.  *Id*. ¶¶ 54, 75.  Based on these allegations, Oakland asserts two claims

21  seeking dismissal of the forfeiture action against the Oakland Property.  First, it asserts that the

22  forfeiture action against the Oakland Property is outside the five-year statute of limitations period

23  applicable to civil forfeiture proceedings under 19 U.S.C. § 1621.  *Id*. ¶¶ 61-70.  Second, Oakland

24  asserts that, having been aware of Harborside's operation at the Oakland Property and by electing not

25  to interfere with such operations for years, the Government should be estopped from pursuing a

26  forfeiture action as a means to now stop Harborside's operations.  *Id*. ¶¶ 71-80.

27           On November 27, 2012, Oakland filed the pending Motion to Stay the Court's ruling on Ms.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

1  Chretien's and Concourse's Rule G Motions, arguing that because its lawsuit attacks the

2  Government's authority to bring the forfeiture action against the Oakland Property, the Court should

3  defer hearing the Rule G Motions until the merits of its claims have been determined.  Dkt. No. 16.

4  Harborside joins in Oakland's Motion (Dkt. No. 20); the Government and Concourse, however,

5  oppose any stay of the forfeiture actions.

6  ### III.  DISCUSSION

7          Because the Court finds Concourse's and Ms. Chretien's Rule G(7)(a) motions suitable for

8  resolution, the Court turns to these Motions first.

9  **A.      Claimants' Rule G(7)(a) Motions to Prohibit Unlawful Use of Defendant Properties**

10          1.     Legal Overview

11          As indicated above, the Government brings forfeiture actions against the San Jose and

12  Oakland Properties pursuant to the forfeiture provision of the Controlled Substances Act ("CSA"), 21

13  U.S.C. § 881(a)(7).  This section provides for the forfeiture of:

14          All real property, including any right, title, and interest (including any leasehold
            interest) in the whole of any lot or tract of land and any appurtenances or
15          improvements, which is used, or intended to be used, in any manner or part, to
            commit, or to facilitate the commission of, a violation of this subchapter punishable by
16          more than one year's imprisonment.

17  21 U.S.C.A. § 881(a)(7).  The Government contends that Harborside's lease and use of the Oakland

18  and San Jose properties to operate medical marijuana dispensaries violates 21 U.S.C. §§ 841(a) and

19  856.  As violations of §§ 841 and 856 fall within the ambit of § 811(a)(7), the Government is

20  authorized to seek forfeiture of the properties and interests therein pursuant to § 881(a)(7).

21          In actions pursuant to the CSA, Congress has vested district courts with jurisdiction to grant

22  injunctive relief for violations of the Act.  Specifically, § 882(a) of the CSA provides in part:

23          The district courts of the United States and all courts exercising general jurisdiction in
            the territories and possessions of the United States shall have jurisdiction in
24          proceedings in accordance with the Federal Rules of Civil Procedure to enjoin
            violations of this subchapter.
25

26  21 U.S.C. § 882(a).  Concurrently, Rule G of the Supplemental Rules of the Federal Rules of Civil

27  Procedure governs forfeiture actions in rem arising from a federal statute.  Fed. R. Civ. P. Supp. R.

28

6

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   G(1).

2        Concourse and Ms. Chretien (collectively, "Claimants") bring their motions pursuant to

3   subdivision (7)(a) of Rule G.  This subdivision, entitled, "Preserving and Preventing Criminal Use of

4   Property," states:

5        When the government does not have actual possession of the defendant property the
         court, on motion or on its own, may enter any order necessary to preserve the property,
6        to prevent its removal or encumbrance, or to prevent its use in a criminal offense.

7   Claimants assert that together, § 882 of the CSA and Rule G(7)(a), authorize this Court to enter an

8   order enjoining Harborside from using the defendant properties to operate medical marijuana

9   dispensaries in violation of the CSA.  Con. Mot. at 4; Chretien Mot. at 4.  Harborside, however,

10  argues that Concourse's and Ms. Chretien's motions are not authorized by Rule G(7)(a), and even if

11  the motions are properly before the Court, Claimants have failed to establish that they are entitled to

12  injunctive relief.  The Court agrees with Harborside.

13        2.    <u>Based on the Plain Language and Context of Rule G(7)(a), Claimants Are Not Proper</u>
14              <u>Movants</u>

15        The threshold question the Court must address is whether claimants, such as Concourse and

16  Ms. Chretien, may bring a motion pursuant to § 882 and Rule G(7)(a) seeking to enjoin another

17  claimant – in this instance, Harborside –  from using the defendant real properties in alleged

18  violations of the CSA.  All parties acknowledge that there are no published decisions involving

19  injunctive relief under Rule G(7)(a) in a forfeiture action.  Moreover, Rule G's Advisory Committee

20  Notes do not provide any guidance as to how the Court should treat such requests.  Thus, whether

21  Claimants have standing to bring their motions and the appropriate standard to apply when

22  considering a request for injunctive relief under Rule G are issues of first impression.

23        The Court begins its analysis with the plain language of the Rule.  *See Bus. Guides v.*

24  *Chromatic Comms. Enter., Inc.,* 498 U.S. 533, 540-41 (1991) (applying principles of statutory

25  construction to Federal Rules of Civil Procedure and noting that the Federal Rules are to be given

26  their plain meaning).  Subdivision (7)(a) of Rule G authorizes the Court "*on motion* or on its own," to

27  enter any order necessary to prevent the defendant property from being used in a criminal offense.

28

7

1    Notably, the rule is silent as to *who* is a proper movant for such relief.  Concourse and Ms. Chretien

2    argue that in the absence of any language restricting who may bring a Rule G(7)(a) motion, the Court

3    should read Rule G(7)(a) broadly to permit claimants such as themselves to file a motion to enjoin

4    use of the defendant properties in criminal offenses.  Neither Ms. Chretein nor Concourse provide

5    any legal authority in support of this construction.

6        Harborside, in contrast, argues that while there are no limitations in the language of Rule

7    G(7)(a) itself, the CSA prevents Claimants from being proper movants under the Rule.  Specifically,

8    Harborside argues that only the Government, not private individuals, may enforce the CSA and cites

9    several cases from other circuits holding that the CSA does not create any private right of action.

10   According to Harborside, Claimants' Rule G(7)(a) Motions are simply veiled private enforcement

11   actions which Claimants lack the authority to bring whether under the CSA directly or under Rule

12   G(7)(a).

13       Turning to Claimants' argument first, the Court is unconvinced that the lack of restrictive

14   language is sufficient for the Court to find that Claimants' are proper movants under Rule G(7)(a)

15   within the context of the pending forfeiture actions.  Reviewing other subdivisions of Rule G, in

16   instances where Rule G intends claimants or other individuals with an interest in the property to have

17   access to certain procedures, it expressly states so.  *See* Fed. R. Civ. P. Supp. R. G(5)(a)(i) ("*A person*

18   *who asserts an interest in the defendant property* may contest the forfeiture by filing a claim in the

19   court where the action is pending."); Fed. R. Civ. P. Supp. R. G(5)(b) ("*A claimant* must serve and

20   file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim.");

21   Fed. R. Civ. P. Supp. R. G(8)(a) ("If the defendant property was seized, *a party with standing to*

22   *contest the lawfulness of the seizure* may move to suppress use of the property as evidence."); Fed. R.

23   Civ. P. Supp. R. G(8)(b)(i) ("*A claimant* who establishes standing to contest forfeiture may move to

24   dismiss the action under Rule 12(b)"); Fed. R. Civ. P. Supp. R. G(8)(d)(i) ("If a United States agency

25   or an agency's contractor holds property for judicial or nonjudicial forfeiture under a statute governed

26   by 18 U.S.C. § 983(f), *a person who has filed a claim to the property* may petition for its release

27   under § 983(f)."); Fed. R. Civ. P. Supp. R. G(8)(e) ("*A claimant* may seek to mitigate forfeiture under

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

8

1    the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion

2    made after entry of a forfeiture judgment . . . .") (emphasis added throughout).  In fact, subdivision

3    7(b)(i) of Rule G, which concerns interlocutory sale or delivery of defendant property, expressly

4    states that "On motion *by a party or a person having custody of the property*, the court may order all

5    or part of the property sold . . . ."  Thus, when Rule G confers special procedural rights on claimants,

6    it does so unambiguously.  In contrast, subdivision (7)(a) does not expressly identify claimants as

7    potential movants for injunctive relief.  The plain language of Rule G(7)(a) therefore does not

8    authorize Claimants to bring the pending motions.

9          Additionally, the Court is unconvinced that Supplemental Rule G(7)(a) was intended to apply

10   to past criminal activity that forms the basis of the underlying forfeiture proceeding.  Looking at the

11   language of subdivision (7)(a), the Rule is concerned with protecting defendant property that the

12   Government does not have in its possession.  It empowers the Court to enter an order to "preserve"

13   the property, to "prevent its removal or encumbrance," or to "prevent its use in a criminal offense."

14   The Rule is thus concerned with *prospective* activity that may threaten or jeopardize the property

15   while the forfeiture action is pending.  With respect to the clause regarding use of the property in a

16   criminal offense, the fact that the Government has filed a forfeiture proceeding necessarily assumes

17   that there is some evidence the property has been used in a criminal offense.  Because the Court

18   cannot protect the property from criminal use that has already occurred, the criminal offense that is

19   the subject of a Rule G(7)(a) motion must be different from that which has already occurred and

20   triggered the forfeiture proceeding.[2]  Here, Claimants urge the Court to restrain Harborside from

---

22        [2]  The interpretation is also consistent with subdivision (b) of Rule G(7), entitled
     "Interlocutory Sale or Delivery," and provides:

23        (i) Order to Sell.  On Motion by a party or a person having custody of the property,
     the court may order all or part of the property sold if:

24
          (A) the property is perishable or at risk of deterioration, decay or injury by being
     detained in custody pending the action;

25
          (B) the expense of keeping the property is excessive or is disproportionate to its fair
     market value;

26
          (C) the property is subject to a mortgage or to taxes on which the owner is in
27   default; or

28

UNITED STATES DISTRICT COURT
For the Northern District of California

9

engaging in the same conduct that gave rise to the forfeiture proceedings – conduct which all parties acknowledge began years ago. Any argument that Harborside's alleged illegal use of the property is continuous or results in new violations each day it operates does not alter this analysis. The object of Rule G(7)(a) is to protect the integrity and value of defendant property during the course of a forfeiture proceeding. Any damage or threat of harm to the Defendant Properties resulting from Harborside's operations would have occurred when Harborside began its operations at the Oakland and San Jose locations; there is nothing in the record indicating that Harborside's continued operation compromises the existence, value, or title of either the Oakland or San Jose Property. Harborside's conduct thus does not fit the type of prospective criminal activity envisioned by Rule G(7)(a).

Taken together, the absence of language identifying "claimants" as potential movants and the prospective nature of Rule G(7)(a) militate against a finding that Concourse and Ms. Chretien are authorized to bring their motions for injunctive relief under Rule G(7)(a).

3.  <u>When Construed in Conjunction with the CSA, Claimants Lack Standing to Bring their Rule G(7)(a) Motions</u>

Nevertheless, even if Rule G(7)(a) is construed to authorize Claimants to enjoin criminal use of property that forms the basis of the underlying forfeiture action, the Court agrees with Harborside that when a CSA violation is alleged, only the Government qualifies as a proper movant for purposes of Rule G(7)(a).

As indicated above, the starting point for this analysis is § 882 of the CSA, which authorizes district courts to enjoin violations of the CSA consistent with the Federal Rules of Civil Procedure. Thus, Rule G cannot be read in isolation; rather, the CSA provides the parameters for any requested relief as long as it is consistent with the Federal Rules. As Harborside points out, courts have consistently held that there is no private right of action under the CSA to force compliance. *See Durr*

---

(D) the court finds other good cause.

Like subdivision (a), this section is concerned with factors that prospectively may affect the existence or value of the property and authorizes the Court to take action to ensure that the property is not lost or compromised during the forfeiture action.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010) (affirming district court's dismissal of inmate's claim

2    for declaratory judgment that drugs used in execution violated the CSA because no private right of

3    action exists under the CSA); *Ringo v. Lombardi*, 2010 WL 3310240, at *2-2 (W.D. Mo. Aug. 19,

4    2010) (finding that the CSA – including § 882(a) –  does not create a private remedy for those

5    aggrieved by violations of the CSA); *West v. Ray*, 2010 WL 3825672, at *3-4 (M.D. Tenn. Sept. 24,

6    2010) (following *Durr* and holding that because no private right of action exists under the CSA,

7    plaintiff could not seek a declaratory judgment that lethal injection protocol violates the CSA); *Jones*

8    *v. Hobbs*, 745 F. Supp. 2d 886, (E.D. Ark. 2010) (holding that because the CSA does not create a

9    private right of action for its enforcement, plaintiffs could evade the intent of Congress by filing

10   actions pursuant to the Declaratory Judgment Act seeking judgment that defendant is violating CSA).

11   Allowing Claimants to bring a motion pursuant to Rule G(7)(a) to stop alleged violations of the CSA

12   would thus give them power not intended under the CSA.  *See Jones*, 745 F. Supp. 2d at 892

13   (recognizing that "[w]hen . . . Congress has decided not to provide a particular federal remedy, we are

14   not free to 'supplement' that decision in a way that makes it 'meaningless.'").

15          Concourse and Ms. Chretien's only response is that they are "not seeking to enforce the

16   federal drug laws per se," but rather are "seeking to stop the use of [their] property in a criminal

17   offense as asserted by the U.S. Attorney."  Con. Reply, Dkt. No. 20 at 2, Case No. 12-3566; Chretein

18   Reply, Dkt. No. 74 at 3, Case No. 12-3567.  The Court does not see the distinction.  Claimants' Rule

19   G(7)(a) motions ask the Court to find that Harborside's operations violate certain provisions of the

20   CSA and to prohibit Harborside from engaging in future conduct.  Claimants are thus using the CSA

21   to bring Harborisde into compliance with the CSA.  *See Ringo*, 2010 WL 3310240, at *3 ("An action

22   based purely on the CSA . . . that would require Defendants to come into compliance with the CSA . .

23   . amounts to a private enforcement action not allowed by the statute[].")  While the relief they seek is

24   injunctive rather than declaratory in nature and no sentence or fine will be imposed if Harborside is

25   found to be in violation of the CSA, the role Claimants occupy is tantamount to the Government in a

26   civil enforcement or criminal prosecution under the CSA.  Consequently, because Claimants have no

27   right of action under the CSA to force Harborside to cease its operations, they cannot take such action

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   using Rule G(7)(a).

2          The fact that the Government has joined Claimants in their Rule G(7)(a) motions does not

3   change this determination.  The Government has not set forth any independent arguments or facts to

4   support injunctive relief pursuant to Rule G(7)(a).  Simply joining in Claimants' Motions does not

5   confer standing on Claimants to bring the motions in the first instance and does not relieve the

6   Government of its burden to make a sufficient showing to entitle it to an injunction under Rule

7   G(7)(a).  Moreover, the Government did not request injunctive relief in its forfeiture Complaints,

8   indicating that the Government was not focused on suspending Harborside's operations during the

9   pendency of the forfeiture actions.

10         4.    Claimants Have Failed to Establish that Injunctive Relief is Appropriate

11         Even assuming that Claimants' are proper movants under Rule G(7)(a), Claimants have failed

12  to persuade the Court that an injunction is appropriate at this stage.  As an initial matter, the parties

13  dispute the proper standard the Court should apply when considering injunctive relief pursuant to

14  Rule G(7)(a).  Harborside argues that the Court should apply the preliminary injunction standard set

15  forth in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Harborside Opp. at 13, Dkt.

16  No. 68, Case No. 12-3567.  In that case, the Supreme Court stated that a plaintiff seeking a

17  preliminary injunction must establish: (1) that he is likely to succeed on the merits; (2) that he is

18  likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities

19  tips in his favor; and (4) that an injunction is in the public interest. *Id*.  Concourse and Ms. Chretien,

20  in contrast, argue that the Court's analysis under Rule G(7)(a) should be limited to examining: (1)

21  whether continued illegal use of the property is likely; and (2) whether the restraining order is an

22  appropriate means of preventing such use.  Conc. Reply at 3, Dkt. No. 20, Case No. 12-3566;

23  Chretien Reply at 3, Dkt. No. 74, Case No. 12-3567.  Neither Harborside nor the Claimants present

24  convincing arguments in support of their proffered standard.  However, the Court reaches the same

25  conclusion under either standard.

26         Turning to the *Winter* test first, the Court finds that the second factor, which assesses

27

28

12

UNITED STATES DISTRICT COURT
For the Northern District of California

irreparable harm, is dispositive in this matter as Claimants cannot make this showing.[3]  First, as previously discussed, there is no evidence that Harborside's activities on the Properties are harming or threatening the value of either Property.  Rather, Claimants continue to collect rent from Harborside, so the Properties remain profitable.  Any harm that Claimants may face relates to the potential loss of their properties if the Government succeeds in the forfeiture proceedings.  While Concourse and Ms. Chretien contend that enjoining Harborside from operating its dispensaries on the properties at this stage may "reduce the risk of forfeiture," there is nothing in the record indicating that the Government intends to dismiss either action if the Court enjoins Harborside's operations.  In fact, at the December 17, 2012 hearing, the Government indicated that even if the Court granted the requested relief, the forfeiture actions would go forward.  To be sure, if the Court denies Claimants' motions and the forfeiture actions proceed, Claimants will have the opportunity to defend against the Government's claims that the Defendant Properties are subject to forfeiture for violation of the CSA, including presenting any innocent owner defenses that may apply.  Thus, there is no irreparable injury to Claimants' rights or their ability to defend their interests.  In any event, in light of the facts

---

[3]  The first factor the Court considers under *Winter* is whether Claimants are likely to succeed on the merits of their claim.  In the instant case, this factor is problematic because the showing that Claimants must make – that Harborside is using the defendant properties in violation of the CSA – is not a position being pursued by the Claimants in the forfeiture actions.  Rather, *the Government* must make that showing to obtain an judgment of forfeiture under 21 U.S.C. § 881(a)(7).  Claimants, to prevent forfeiture of their interests, must refute the Government's showing that the properties were involved in violations of the CSA or establish some other defense.  Thus, the Court cannot assess the *Claimants'* likelihood of success on an argument that they will be disputing at a later stage of the forfeiture proceedings.  That aside, Concourse and Ms. Chretien have failed to present sufficient evidence in the record to support a finding that Harborside's operations violate the CSA.  To be sure, as Claimants correctly point out, Harborside has averred in its Answer that it is operating a medical marijuana dispensary in compliance with California law.  Claimants would have the Court take this statement and find that Harborside is therefore in violation of the federal CSA without any further evidentiary findings.  This not only prevents Harborside from presenting a meaningful defense, but distorts the normal course of the forfeiture actions by advancing what will be the determinative issue to this preliminary stage of the proceedings.  While Rule G(7)(a) may allow for injunctive relief to stop the use of defendant property, the Court does not believe that this provision was meant to be used to short-circuit the procedures and evidentiary burdens in forfeiture actions.

1   that the Government has not seized the Defendant Properties, Claimants continue to receive rent from

2   Harborside, and Claimants will have the opportunity to present any arguments they have militating

3   against forfeiture in the underlying proceedings, there is no evidence of irreparable injury to

4   Claimants.

5            Because Claimants cannot satisfy the irreparable injury factor, they could not prevail under a

6   traditional preliminary injunction analysis and the Court declines to analyze the remaining factors.[4]

7   _____

8            [4] In their motions, Claimants devote considerable discussion to the Supreme Court's
    decision in *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483 (2001) ("*OCBC*").
9   Particularly, Claimants argue that *OCBC* "makes it clear that the court does not have discretion to
    deny injunctive relief on the basis of the medical needs of Harborside's patients or any other public
10  policy consideration related to medicinal use of cannabis." Conc. Mot. at 4; Chretien Mot. at 4-5.
    Claimants also argue that *OCBC* "suggests that this court may only deny injunctive relief if there is a
11  preferable mechanism for enforcing the underlying statute." Conc. Mot. at 4; Chretien Mot. at 5.
12  They assert that in this case "injunctive relief is warranted because it is specifically authorized under
    Rule G and is the most expedient and efficient means of preventing use of the Property in a criminal
13  offense."
            The Court finds *OCBC* inapposite to the pending motions. First, *OCBC* addressed the scope
14  of the Court's discretion when fashioning injunctive relief in the context of a civil enforcement
15  action that the Government filed pursuant to § 882 of the CSA against six medicinal cannabis
    cooperatives. *See United States v. Cannabis Cultivator's Club et al.*, 1999 WL 111893, at *1 (N.D.
16  Cal. Feb. 25, 1999). The decision did not address a request for injunctive relief by a third party
    pursuant to Supplemental Rule G(7)(a) in the context of a civil forfeiture action. This distinction is
17  critical. Because injunctive relief was the core of the civil enforcement action, the Supreme Court
18  admonished that, in exercising its discretion to fashion injunctive relief, the trial court could not
    consider public interest factors that "reject the balance that Congress has struck in a statute," but
19  rather may only consider whether a particular means of enforcing the statute should be chosen over
    another permissible means. *OCBC*, 532 U.S. at 487. In other words, in the context of a civil
20  enforcement action under the CSA, the trial court could not consider the advantages and
21  disadvantages of *nonenforcement* of the statute, but only the advantages and disadvantages of
    injunctive relief as compared to another permissible means of enforcement. Here, in contrast, the
22  objective of the Government's lawsuit is forfeiture of the Defendant Properties, not enforcement of
    the CSA. In fact, the Government's Complaints do not contain any request for injunctive relief
23  against Harborside. Significantly, unlike *OCBC*, denial of the Claimants' motions in this case does
24  not amount to a decision that nonenforcement of the CSA is preferable to enforcement, only that a
    Rule G(7)(a) motion by a private individual is not an authorized means of enforcing the CSA in a
25  civil forfeiture action. The Government is still free to pursue an injunction against Harborside in a
26  civil enforcement action, as it did against the dispensary-defendants in *OCBC*. It has, however,
    opted to initiate a civil forfeiture proceeding against the Defendant Properties. In this procedural
27  context, the Court does not read the holding of *OCBC* as restricting its discretion under Rule G(7)(a)

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Claimants fare no better under their proffered standard.  As indicated above, Claimants

2   contend that the Court need only consider whether continued use of the property is likely and whether

3   the restraining order is an appropriate means of preventing such illegal use.  As to the first factor, it is

4   undisputed that Harborside continues to operate its medical marijuana dispensaries and has refused

5   Claimants' requests to cease its operations, making its continued use of the Defendant Properties

6   likely.  However, the second factor weighs against granting the requests.  Claimants are attempting to

7   use a procedural rule in a civil forfeiture proceeding to bring what amounts to an enforcement action

8   under the CSA against Harborside.  This is a measure which the Government – the entity charged

9   with enforcing the statute – has elected not to pursue.  Claimants' strongest argument in support of

10  their requests is that they are attempting to minimize the risk that their properties will be forfeited by

11  taking all reasonable measures to cause Harborside to cease illegal activity.  However, there is

12  nothing indicating that the Government intends to dismiss the forfeiture actions if the Court enjoins

13  Harborside's activities on the Properties.  Moreover, any argument about the urgency of stopping

14  Harborside's activity rings hollow.  It is undisputed that until the Government filed the forfeiture

15  actions, neither Concourse or Ms. Chretien had taken any action or sought government assistance to

16  stop Harborside's operations.  Rather, both of the respective lease agreements recognized

17  Harborside's intended use of the defendant properties.  Since the execution of the lease agreements,

18  Claimants have collected rents – and in Ms. Chretien's case, provided and charged for additional

19  security services – thus profiting from Harborside's alleged illegal use of the Defendant Properties.

20  When considering these facts and circumstances, the Court struggles to see how Claimants'

21  Rule G(7)(a) Motions are an appropriate means of stopping Harborside's alleged illegal use of the

22  Properties.  While Rule G(7)(a) aims to protect property during the pendency of a forfeiture

23

24  _____

to deny the Claimants' requests for injunctive relief.

25   Second, to the extent that Claimants cite *OCBC* for the proposition that the Court cannot
26  deny injunctive relief based on considerations related to the medical needs of Harborside's patients
    or other public policy considerations related to the medicinal use of marijuana, Claimants argument
27  is inapposite.  The Court's decision in this matter is not based on such public policy considerations.

28

15

1   proceeding, it is not a vehicle to insert a CSA enforcement action by a private party into a forfeiture

2   proceeding.  Moreover, while the Court understands Claimants' concern over the potential forfeiture

3   of their properties, Rule G(7)(a) is not a means to sever business relationships when they suddenly

4   prove risky or to demonstrate cooperation with the Government.  For these reasons, even under

5   Claimants' proffered standard, the Court finds that Claimants have failed to demonstrate that they are

6   entitled to injunctive relief under Rule G(7)(a).

7           5.     <u>Summary</u>

8           In sum, the Court finds that the plain language of Rule G(7)(a) does not authorize Concourse

9   or Ms. Chretien to bring their motions; the alleged criminal use of the property they seek to enjoin is

10  not of the type envisioned by Rue G(7)(a); Claimants' are not authorized to enforce provisions of the

11  CSA; and Claimants have failed to establish that injunctive relief is appropriate at this time.  Based

12  on these findings, he Court **DENIES** Concourse's and Ms. Chretien's Rule G(7)(a) motions.

13  **B.      Oakland's Motion to Stay**

14          In its action against the Government, Oakland has filed a Motion to Stay the Court's

15  resolution of Claimants' Rule G(7)(a) Motions.  Dkt. No. 16, Case No. 12-5245.  Because the Court

16  finds no just reason to delay resolution of the Rule G(7)(a) motions, the Court **DENIES** Oakland's

17  Motion to Stay.

18          Oakland has also moved to stay both forfeiture proceedings pending resolution of certain

19  issues raised in its action, which it contends are potentially dispositive of the Government's forfeiture

20  actions.  At oral argument, both Claimants and Harborside indicated that at least with respect to

21  Oakland's statute of limitations argument, they would be raising the same challenges to the

22  Government's actions.  Rather than stay the forfeiture actions, the better course is to allow each of the

23  cases to proceed on a schedule that coordinates discovery and dispositive motions so that the parties

24  can raise any and all challenges simultaneously.  The Court therefore **DENIES** Oakland's request to

25  stay the forfeiture proceedings.

26  / / /

27  / / /

28

16

**IV.   CONCLUSION**

For the reasons set forth above, the Court **DENIES** Concourse's and Ms. Chretien's Motions for Order Prohibiting Unlawful Use of Defendant Property (Dkt. No. 13, Case No. 12-3566; Dkt. No. 64, Case No. 12-3567).

Further, the Court **DENIES** the City of Oakland's Motion to Stay (Dkt. No. 16, Case No. 12-5245).

**IT IS SO ORDERED.**

Dated: January 7, 2013

_____
Maria-Elena James
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

17